CARL T. PFAFF, Appellant, v. JACOB GRUEN and JOHN GRUEN, Respondents.

**St. Louis Court of Appeals, February 25, 1902.**

1. **Corporation:** LIABILITY OF SHAREHOLDERS IN DEFUNCT CORPORATION, UNDER OHIO STATUTE: LIABILITY OF SHAREHOLDERS UNDER LAW OF MISSOURI: PETITION: CAUSE OF ACTION. A petition states a cause of action which alleges that plaintiff is both a stockholder and a creditor of an insolvent Ohio corporation, and that he brings this suit in behalf of himself and all its other creditors; that defendants are and for years have been stockholders thereof and the only stockholders resident in Missouri; that suits had been instituted in Ohio against stockholders and the corporation, the object of which suits was to wind up the corporation, ascertain its indebtedness, collect its assets and distribute them among its creditors; that by the finding of the court, and also by the return of an execution which had been issued on a judgment obtained by a creditor, it appears the corporation is insolvent; that an assessment of thirty per cent of the par value of the company's capital stock was assessed against the shareholders in the Ohio suit, which assessment they were directed to pay to the receiver who had theretofore been appointed, and that all holders of stock except the defendants in Missouri have paid that assessment; that the amounts necessary to be paid by the defendants and all other shareholders to make good what the company owes were definitely fixed by the decree of the Ohio court as stated, and that all stockholders except these defendants, have paid the amount of the assessment so levied; that the defendants refuse to pay, wherefore this action was instituted to compel payment.

2. ———: LIABILITY OF STOCKHOLDERS: AGREEMENT OF STOCKHOLDERS. If persons subscribe for shares in a corporation organized under a law which imposes a liability, they are presumed to have subscribed with reference to that law as well as all others regulating the corporation and its members, and to have consented to be thus responsible.

Pfaff v. Gruen.

3. ————: ————. The liability of a stockholder in a corporation is not primary but contingent on the insolvency of the corporation, and its inability to meet its obligations to creditors.

4. ————: ————: ————. Shareholders of a corporation are bound by all proceedings to which it is a party, whether they are parties or not, if such proceedings relate to corporate affairs.

5. **Pleading:** PRACTICE, TRIAL. Under an Ohio statute which prescribed that "stockholders of a corporation shall be deemed and held liable, in addition to their stock in an amount equal to the stock by them acquired......to the creditors of the corporation to secure the payment of the debts and liabilities of the corporation," and that a creditor may enforce such liability by action jointly against all the holders for arrears of stock, which action shall be for the benefit of all creditors of a corporation and against all persons liable as stockholders, and in such action there shall be found and determined the amount payable by each person liable as a stockholder on all indebtedness of a corporation......it is held that if an original suit had been instituted in a court of the company's domicile and all stockholders in the jurisdiction brought before that court, an account taken of the debts and resources of the company, the excess of the former ascertained, together with the solvency or insolvency of its different shareholders and the sum in which each ought to be assessed, and an appropriate decree entered establishing those things, then an ancillary proceeding may be had in a foreign court against stockholders resident in that jurisdiction who could not be brought before the domestic court in the original proceeding, to make them pay their proportionate dues as ascertained in the parent suit.

6. **Practice, Trial.** But the findings and decrees in the parent action or suit are only prima facie evidence against foreign shareholders who are not parties thereto.

7. **Parties, Misjoinder of.** In the case at bar, there was not a misjoinder of parties defendant.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED *(with directions).*

*Noble & Shields* for appellant.

(1)   Stockholders are bound by the decree in insolvent proceedings to the extent of showing that it was necessary that assessments to pay creditors should be made, and that they were made.   Thomp. on Corporations, sec. 3049; Howard v. Glenn, 85 Ga. 238; Hawkins v. Glenn, 131 U. S. 319; Glen v. Liggett, 135 U. S. 533; Glen v. Marburg, 145 U. S. 499; Railroad v. Smith, 54 Ohio St. 562; Thomp. on Corp., secs. 3567, 3499.   (2)   The statutory double liability of the stockholders in a corporation is contractual and may be enforced against the stockholder, in the courts of his domicile.   Kirtley v. Holmes, 107 Fed. 1; Hodgson v. Cheever, 8 Mo. App. 318; Bagley v. Tyler, 43 Mo. App. 195; Guerney v. Moore, 131 Mo. 650; Farmer's Co. v. Gallaher, 43 Mo. App. 482; Sackett Bk. v. Blake, 3 Rich Eq. 225, 234; Aultman's Appeal, 98 Pa. St. 505.   (3)   The proceeding is properly in equity.   Leuke v. Treadway, 45 Mo. App. 507; Perry v. Turner, 55 Mo. 418; Shickle v. Watts, 94 Mo. 410; King v. Armstrong, 50 Ohio St. 222-233; Turnbull v. Pomeroy Salt Co., 24 Weekly Law Bulletin, 133; Morgan v. Lewis, 46 Ohio St. 1; Younglove Lime Co., 49 Ohio St. 663; Barnett v. Gifford, 47 Ohio St. 180.   (4)   The action is good under Missouri statutes. Laws 1891, p. 68; Riley v. Grand Island Receivers, 72 Mo. App. 281.

*J. Hugo Grimm* for respondents.

(1)   The right to hold stockholders in an amount equal to the stock held by them is a right unknown to common law; it is a right created by statute.   As the statute creating this right also prescribes the remedy for its enforcement, that remedy is the only and exclusive remedy.   And the remedy prescribed is of such a character as to be available only in the

courts of the State creating the corporation, being an equitable proceeding against the corporation and all its resident stockholders for the purpose of completely winding up its affairs. Finney, Receiver, v. Guy, 106 Wis. 256; Nimick v. Mingo Iron Works, 25 W. Va. 184; Bank v. Francklyn, 120 U. S. 746; Marshall v. Sherman, 148 N. Y. 10; Fowler v. Lamson, 146 Ill. 472; Bates v. Day, 198 Pa. St. 513; 3 Thompson's Corporation, sec. 3054, 3055; 1 Cook Corporation, sec. 220, 223; Erickson v. Nesmith, 15 Gray, 221; Knowlton v. Ackley, 8 Cush. 93; Dauchy v. Brown, 24 Vt. 197; Pollard v. Bailey, 20 Wall. 527. (2) It will not do to say the suit is based upon the Constitution of Ohio and not the statutes. As a matter of fact, the petition distinctly predicates the suit upon the statutes. Marshall v. Sherman, 148 N. Y. 9. (3) Indeed, the suit must be based upon the statutes, as the Constitution of Ohio, so far as the provision in question is concerned, is clearly not self-executing, but distinctly calls for legislation to carry out its provision. Marshall v. Sherman, 148 N. Y. 9; Groves v. Slaughter, 15 Pet. 449; Morley v. Thayer, 3 Fed. Rep. 737; May v. Black, 77 Wis. 101; Woodworth v. Bowled, 61 Kan. 569. (4) Defendants in this cause are not bound by the judgment rendered in Ohio by the court of common pleas because they were never served with summons and did not enter an appearance therein. They were not in said suit represented by the corporation in any such sense as that judgment could be rendered against them or affecting their individual liability. Wilson v. Railroad, 108 Mo. 588; Rood v. Wharton, 67 Fed. Rep. 434; Winston v. Bosler, 102 Fed. Rep. 70; Finney, Receiver, v. Guy, 106 Wis. 256. (5) Upon plaintiff's theory as to the force and effect of the action of the Ohio case, the demurrer was properly sustained because of a misjoinder of parties defendant. Plaintiff's theory is that the Ohio court rendered judgment against Jacob Gruen for a certain amount and against John Gruen for a certain amount, and plaintiff now asks this court to render a judgment against each

defendant for the amount determined by the Ohio court, plus interest. In other words, he is joining two suits upon judgments rendered against different persons. Whether the suit be considered legal or equitable in its nature, there is a misjoinder of parties defendant. Perry v. Turner, 55 Mo. 418.

GOODE, J.—A demurrer was sustained to the plaintiff's petition in this case, in which he seeks to enforce a statutory liability against Jacob Gruen and John Gruen as stockholders in the Columbus Watch Company, an insolvent corporation organized under the laws of the State of Ohio.

The grounds of the demurrer were a misjoinder of parties defendant and a failure to state facts sufficient to constitute a cause of action.

Plaintiff stood on his petition.

From the allegations contained therein it appears the plaintiff is both a stockholder and a creditor of an insolvent Ohio corporation, the Columbus Watch Company, and that he brings this suit in behalf of himself and all its other creditors. The defendants are and for years have been stockholders thereof and the only stockholders resident in this State. It also appears that two suits have been instituted in the court of common pleas of Franklin county, Ohio, against said watch company. In one the plaintiff in this action, Carl Pfaff, and Louis Lindeman were plaintiffs; in the second, Jacob Scheutz was plaintiff. In both cases the corporation itself and all the stockholders in Ohio were made parties defendant, either by service of process or their voluntary appearance. The object of both suits was to wind up the corporation, ascertain its indebtedness, collect its assets and distribute them among its creditors.

By the finding of the said court of common pleas and also by the return of an execution which had been issued on a judgment obtained by said Scheutz against the Columbus

Watch Company and returned *nulla bona* prior to the filing of his bill in equity, it appears the corporation is insolvent.

A receiver was appointed in the first case, prior to the institution of the second one, but the two causes were subsequently consolidated and the same receiver retained. It further appears that an assessment of thirty per cent of the par value of the company's capital stock was assessed against the shareholders in said suit in Ohio, which they were directed to pay to the receiver and that all holders of stock, including these defendants, have paid that assessment. Afterwards, another assessment was levied against the stockholders, which, with the first levy, carried the assessments against them up to the full par value of the capital stock. The amounts necessary to be paid by the defendants and all other shareholders to make good what the company owes, were definitely fixed by the decree of the court in said consolidated case and all the stockholders have paid their second assessment, except these defendants who refuse to pay, wherefore this action was instituted to compel payment.

We regard most of the propositions of law involved in the controversy as well settled and supported by harmonious decisions; but some of them are still open, at least in this jurisdiction, and the cases in other States which deal with them are so contradictory as to cast doubt on what the rule is or ought to be.

A statutory liability, like the one with which the defendants are sought to be charged, is not strictly an asset of a corporation, but an indemnity or further security exacted by the laws of the State of the corporation's domicile for the benefit of its creditors. Such a liability is not in the nature of a penalty, nor does the obligation to discharge it, if the contingency for which it is provided happens, that is, if the corporation becomes insolvent, rest exclusively on the Constitution and statutes which impose it. While it is a legislative expression of

the public policy and popular sentiment of the State where it prevails as to how incorporated companies can be best regulated, as between a shareholder of a company and the company's creditors, it is in the nature of a contract; because if persons subscribe for shares in a company organized under a law which imposes the liability, they are presumed to have subscribed with reference to that law as well as all others regulating the companies and their members, and to have consented to be thus responsible. It is, therefore, in legal effect a promise to answer to corporate creditors in proportion to the value of the stock one holds—an implied contract to pay the company's debts if the company itself can not. Brown v. Hitchcock, 36 Ohio St. 667; Concord Nat. Bank v. Hawkins, 174 U. S. 372; Blakeman v. Benton, 10 Mo. App. 107.

Another settled rule is that this liability on the part of shareholders is not primary but contingent on the insolvency of the company and its inability to meet its obligations to creditors.

The disposition of the courts of States outside the one where an insolvent company is domiciled is to enforce such a statutory liability, both because of that comity and good will which ought to exist among the States of the Union and that respect which the governmental departments of other States ought to show to the laws and policies of a sister State, and also because it is the duty of courts everywhere to compel parties to keep all obligations and engagements, not illegal or immoral, into which they enter. As has been said, a liability of this kind is more than a public policy, more than a mere indemnity exacted from the holders of corporate stock in favor of corporation creditors; it is an obligation voluntarily assumed by every individual who subscribes for shares in a company organized and doing business under laws which prescribe such a liability, and, therefore, over and above the duty of comity—that *noblesse oblige* which should constrain sovereign States—ought to be

enforced on the same broad principles and for the same persuasive reasons that other contracts are enforced; because a principal duty of courts is to compel men to perform their contracts. Legal and judicial compulsion is what makes agreements useful, and the transaction of business by and through agreements possible. It is the obligation of contracts, which consists in the remedy given by the law for their enforcement. Cocke v. Hoffman, 5 Lea 112.

"A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking and this is of course the obligation of his contract," was the language of Chief Justice MARSHALL in Sturges v. Crowinshield, 4 Wheat. 122.

The foregoing observations apply to the statutory liability of members of corporations generally, wherever that kind of liability exists, without reference to the particular provisions of the Constitution and statutes of Ohio, which we are called on to consider in this case and which need to be noticed. The Constitution of that State contains this clause:

"Dues from corporations shall be secured by such individual liability of the stockholders and other means as may be prescribed by law, but in all cases each stockholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon and a further sum at least equal in amount to such stock."

In the Revised Statutes of Ohio are the following sections undertaking to execute the foregoing constitutional provision:

"The stockholders of a corporation which may be hereafter formed and such stockholders as are now liable under former statutes shall be deemed and held liable in addition to their stock in an amount equal to the stock by them subscribed, or otherwise acquired, to the creditors of the corporation to secure the payment of the debts and liabilities of the corporation.

"The term 'stockholders' as used in the preceding section shall apply not only to such persons as appear by the books of the corporation to be such, but to any equitable owner of stock, although the stock appears on the books in the name of another."

There is also this statute providing the procedure according to which the liability is to be enforced in the State of Ohio:

"A stockholder or creditor may enforce such liability by action jointly against all the holders or owners of stock, which action shall be for the benefit of all creditors of a corporation and against all persons liable as stockholders, and in such action there shall be found and determined the amount payable by each person liable as stockholder on all indebtedness of a corporation, in which adjudication no costs shall be taxed to nor collected of any stockholder to an amount which, together with the amount to be paid on said indebtedness, will exceed the amount of stock on which he is liable."

It has been adjudged by the Supreme Court of Ohio that the statutory responsibility of stockholders, created by the legislation above quoted, was intended for the exclusive benefit of creditors; that the corporate authorities have no control over the liability; that a suit by a creditor to enforce it should be for the benefit of all the creditors and that stockholders who are proceeded against are entitled to have all their co-members made parties so there may be an accounting, an ascertainment of the company's debts, creditors and assets, an assessment of the members in proportion to their holdings of stock and a distribution of the assets and the sum collected from the shareholders among the creditors, and that the corporation ought to be a party. Wright v. McCormack, 17 Ohio St. 87; Umsted v. Buskick, 17 Id. 113.

As the construction of the Constitution and statutes of a State by its highest court is usually deferred to and recognized as the true meaning of those laws, it must be held, in

view of the foregoing decisions, and, indeed, of the language of the statute last quoted, that the proper method to enforce the liability of the shareholders of an insolvent Ohio company to its creditors is by a bill in equity filed in behalf of all the creditors against all the stockholders joined as co-defendants with the corporation itself. The foregoing proposition necessarily implies that the proper forum in which to institute such a suit is the court of the company's domicile, where jurisdiction of the company itself may be acquired and usually of a majority of its members and where the company's officers, books, vouchers and other data needed to ascertain its financial condition are accessible.

This brings us to a question about which there is much dispute and an irreconcilable conflict of opinion, namely: whether the liability should be enforced by the courts of another jurisdiction when the insolvent corporation is domiciled and does business in a State whose statutes provide a remedy for the enforcement of the liability like the one provided by the Ohio statute; that is, by a proceeding to which all the shareholders and the corporation itself must be parties and which must be instituted by all the company's creditors, or by one or more of them in behalf of all? As has been said, it is the disposition of the courts of all the States at the present time, although it was not always so, to aid in the collection of these dues from stockholders resident inside their jurisdiction whenever they can; and that is certainly the judicial policy of Missouri, as declared by our Supreme Court in a carefully considered opinion which disapproved the contrary rule announced in the earlier decisions of the Supreme Court of Massachusetts. Guerney v. Moore, 131 Mo. 650. But whatever may be the judicial inclination in this regard, courts have sometimes found it impossible to enforce foreign legislation of this kind without doing violence to well-settled legal rules and injustice to the stockholders resident in their jurisdiction and proceeded against therein, from their inability to obtain jurisdiction of

all the shareholders and of the corporation itself; for to hold outside stockholders liable in a proceeding to which the other members of the corporation are not parties will occasionally result in imposing on them a heavier burden in respect to the corporate debts than the statutes of the domicile contemplate or than is imposed on domiciliary shareholders. The duty of the members to respond to creditors only arises if the corporate assets are inadequate to meet its obligations and those assets ought to be first exhausted. But a foreign court has no power to sequestrate or levy on the company's assets, and, hence, can not secure to shareholders their right to have the company's property applied in satisfaction of its debts before they are called on to pay. Neither can foreign tribunals ascertain as readily as a domestic one the solvency of the different members and the amount in which each should be assessed, while it is impossible to compel contribution among them. Erickson v. Nesmith, 15 Gray 221.

One rule of statutory construction is, that when a statute creates a right which did not exist before at common law and at the same time provides a remedy for the enforcement of that right, this remedy is exclusive. The theory underlying that canon of construction is that in such cases the remedy is so intimately associated with the right as to be a part of it and the right and remedy are inseparable. Morley v. Thayer, 3 Fed. 737; Slee v. Bloom, 19 John. 456; Lowry v. Inman, 46 N. Y. 119; Dauchy v. Brown, 24 Vt. 197. As a consequence, when a court outside the State where such a statute is in force is called on to compel obedience to it and finds itself unable to apply the prescribed remedy, either because the procedure it may tolerate does not embrace such a remedy, or because the necessary parties to make the remedy effective are beyond its reach, or from any other circumstance standing in the way of a just use of the remedy, it will refuse to entertain the litigation, although it would entertain it if no remedy was prescribed by the statute creating the right and would then enforce the

right according to its own ordinary procedure or the course of the common law. Accordingly it has been held in many cases, in conformity to this rule of construction and practice, that when the statutes of any State impose a liability on the shareholders of a company of that State to its creditors equal in amount to the stock held by them, and prescribe a remedy to make the liability available to creditors, that remedy is exclusive and the right will not be enforced by courts of outside jurisdictions unless it may be as effectively applied by them as by the domestic courts. Pollard v. Bailey, 20 Wall. (U. S.) 527; Fourth Nat. Bank v. Francklyn, 120 U. S. 746; Finney v. Guy, 106 Wis. 256; Erickson v. Nesmith, 15 Gray, supra; Bank of North America v. Rindge, 154 Mass. 203; Bates v. Day, 98 Pa. St. 513; Fowler v. Lampson, 146 Ill. 472; Morley v. Thayer, 3 Fed. Rep. 737.

But one can not read the cases on this subject without being convinced that the drift is more and more towards qualifying this doctrine so as to make shareholders answer to corporate creditors in the courts of sister States and to brush away the difficulties and dangers of attempting to hold them as often though not always, purely technical, imaginary and derogatory to justice. Indeed, a perusal of the cases clearly shows an increasing liberality and breadth of view in dealing with this question; a tendency to disregard questions of procedure when they involve no substantial right and to place these contracts on the same plane others occupy in respect to judicial enforcement. Local prejudices are less influential than they were and there is less State jealousy and disposition to screen citizens of the State of the forum, who hold stock in insolvent companies in other States, from losses incident to their holdings. The earlier spirit displayed in the decisions on this subject was to some extent a reproach to justice, the opinions often being manifestly colored and biased by partiality for home shareholders and an inclination to find technical excuses for exonerating them from their just responsibilities. But as corporate

transactions have widened and become more and more inter-
state and international in scope, the shareholders of many com-
panies being scattered through different states and nations, the
courts have come to see the injustice and impolicy of such rul-
ings, have gradually acquired a more catholic spirit in dealing
with the matter and have sought methods of enforcing rather
than of defeating the liability.    As a consequence we find very
contradictory decisions, not only by different courts but by the
same court in earlier and later cases, the current of opinion set-
ting, in the main, in the direction of upholding the obligation
of shareholders to company creditors.    This change of attitude
is well illustrated by the opinions of the New York Court of
Appeals in Marshall v. Sherman, 148 N. Y. 9, and Howarth v.
Angle, 162 N. Y. 179, in the former of which it was held the
liability imposed by the Constitution and statutes of Kansas on
the holders of corporate stock in a company organized under
the laws of that State could only be enforced in the courts of
Kansas, a decision, by the way, in conflict with that of our Su-
preme Court in Guerney v. Moore, supra, and most others
which consider the Kansas statutes.

In Howarth v. Angle, the New York Court of Appeals
entertained a suit by the receiver of an insolvent bank, incor-
porated in the State of Washington, to collect the liability im-
posed by the statutes of that State on corporation stockholders
against a stockholder of the bank resident in New York.  The
court instead of overruling Marshall v. Sherman, distinguished
the two cases on grounds more or less solid; but the decisions
are absolutely contradictory in their reasoning and spirit, the
older one showing a hostile feeling to the effort to collect the
liability from citizens of New York, while the recent one re-
ceived it with the same judicial impartiality shown to any other
proceeding to compel performance of an engagement.    These
cases, in addition to showing the drift of adjudication, are in-
structive in reference to the one at bar in another respect. The
plaintiff's right in Howarth v. Angle was held to be taken out

of the rule recognized in Marshall v. Sherman, because the indebtedness of the insolvent bank, the amount of its assets and the liability of all its stockholders, had already been ascertained by a proceeding in a court of the State of Washington, the corporation's domicile. True, the stockholder resident in New York was not a party to that proceeding, but he had an opportunity in the trial court in New York to contest all the essential facts, and his liability was ascertained by said trial court on appropriate evidence.

A similar change of heart is exhibited in two cases decided by the United States Circuit Court of Appeals for the First circuit, to-wit, State Nat. Bank of Cleveland, Ohio, v. Sayward et al., 91 Fed. Rep. 443, 33 C. C. A. 564; and Hale v. Hardon, 95 Fed. Rep. 747, 37 C. C. A. 240. The opinions in both those cases were written by the same judge and both were actions begun in the circuit court of the United States for the district of Massachusetts against stockholders of foreign companies resident there; one against a stockholder in an Ohio corporation and the other against a stockholder in a Minnesota corporation. In the first case it was ruled that the remedy provided by the Ohio statutes in such matters was an equitable proceeding, and exclusive of all others; and as the Federal Court of Massachusetts could not get the necessary parties before it, it could not apply the remedy.

In Hale v. Hardon, the suit was brought by a receiver of a defunct Minnesota company who had been appointed by a court of that State to take charge of the company's assets and collect the dues of the stockholders, and the Federal Court entertained this suit on the ground that the necessary adjudication to ascertain the indebtedness, the assets and the insolvency of the corporation had taken place in the domiciliary court. It was held that the Minnesota Constitution and statutes "clearly contemplate a proceeding in the nature of an equity proceeding in that State for the benefit of all the creditors in which all the debts and assets will be ascertained, in-

cluding the amounts due and remaining unpaid on subscription for stock, and that the avails of the stockholders' liabilities to creditors wherever found, shall be ultimately drawn to the parent proceeding and all for distribution upon general insolvency principles and upon equitable grounds, among the creditors, without discrimination in favor of home creditors," the very remedy prescribed by the Ohio statutes as was decided in Wright v. McCormack, and Umsted v. Buskick, supra.

Hale v. Hardon contains an exhaustive and able opinion which is very instructive in respect to all phases of the subject. As the same judge wrote it who wrote the opinion in State National Bank v. Sayward, supra, and as the remedies provided by the Minnesota and Ohio statutes are identical, he justified the opposite results which were reached in the two cases by commenting on the earlier one as follows:

"In a recent case in this circuit involving the Ohio statute (State Nat. Bank v. Sayward, 33 C. C. A. 564) some observations were made as to what the Ohio statute contemplated as to procedure and what was intended should be done in the home State before liability under that statute could be enforced extraterritorially without intimating what would have been done in that case if the joinder and ascertainments contemplated by such statute had been made. Relief was denied therein, for the reason that what was contemplated as to ascertainments and joinder had not been done."

That case also holds the procedure in the ancillary litigation should be similar to that provided for by the statutes of the domicile, as does also Kirtley v. Holmes, supra.

We may allude to the foregoing precedents again in the course of this opinion.

The Supreme Court of Massachusetts took strong ground in its earlier decisions against enforcing this statutory obligation against shareholders of a foreign corporation who were citizens of and resident in that State, assigning two distinct reasons therefor, to-wit: the impossibility in some instances of

applying the remedy prescribed by the foreign statute (Erickson v. Nesmith, supra), and also the impolicy of making its citizens respond to such demands (Bank of North America v. Rindge, 154 Mass., supra). The Court of Appeals of New York acknowledged in Marshall v. Sherman, supra, that the second reason was of great weight. But a very different sentiment is now cherished by the courts of both those States. It was a Kansas statute which the Supreme Court of Massachusetts refused to recognize in the Rindge case, but in Hancock National Bank v. Ellis, 172 Mass. 39, the same statute was enforced against Massachusetts shareholders in an opinion which said, among other things:

"When the liability is distinctly imposed by statute upon the stockholders severally, it would be unfortunate if it could not be enforced against stockholders not resident within the State under whose laws the corporation has been established on the ground that due process could not be served on them within that State, and the courts of the State where they reside would not take jurisdiction of suits to enforce the liability."

The question came before that court again in Howarth v. Lombard, 175 Mass. 570, a suit which, like the one at bar, was ancillary to an equitable proceeding in the company's home court in the State of Washington wherein a receiver for the insolvent bank had been appointed, the amount of its assets and liabilities determined, the necessity for an assessment upon stockholders and the amount of the required assessment ascertained, and an assessment on all the stockholders made. It was ruled the liability was contractual and was enforcible everywhere. The opinion says:

"Inasmuch as the nature of it and the method of enforcing it depend upon the statute which enters into the implied contract, we must look to the statute to ascertain its extent and the manner of enforcing it. If it is of such a nature as to call for local proceedings in the State where the corporation is, in order

to adjust equities, such proceedings must be had, and it can not be made effectual without them.    Most of the cases in which creditors of foreign corporations have been refused relief in this commonwealth have shown rights which, under the statutes creating them, could not properly be enforced without proceedings in the foreign State, whereby equities could be adjusted.    In the present case, as the statute has been construed, it is plain that no action can be maintained against a stockholder until after proceedings in a court of Washington, showing the insolvency of the corporation and the need of payment to satisfy the claims of creditors.    After such proceedings, and an adjustment of the rights and liabilities of the corporation, of creditors and of stockholders, collection can be made from stockholders wherever they are found."

In Whitman v. Oxford National Bank, 176 U. S. 559, the Supreme Court of the United States threw the weight of its great authority in favor of the proposition that the statutory liability of corporate shareholders to creditors is contractual; that an action to enforce it is one to obtain a private right and can be maintained in any court of competent jurisdiction, whether State or Federal.

This very Ohio statute with which we are dealing was the basis of a bill in equity filed in a common pleas court in Pennsylvania to collect their dues from shareholders of an insolvent Ohio company resident in the former State.    The case went on appeal to the Supreme Court and was decided in an opinion delivered by Chief Justice SHARSWOOD.    It is evident that while the Pennsylvania court acquired jurisdiction of all the stockholders and creditors, as they were all residents, it did not and could not acquire jurisdiction of the corporation itself as it was domiciled in Ohio.    Nevertheless, the decision was that the bill should be retained, as the corporation was insolvent and its assets had been exhausted.

Hanson v. Davison, 73 Minn. 455, was where a stockholder in a Minnesota bank was proceeded against in an ancil-

lary action by a receiver appointed in an original action against the corporation and all its resident stockholders to collect their liabilities from them, the defendant not having been a party to the original action because she was a non-resident, and it was ruled that although the statute contemplated an action to which all the shareholders and the corporation should be parties in the first place, an ancillary action might be maintained against one who was omitted from the original action for want of jurisdiction, provided the amount that would be due the creditors after the assets of the corporation had been exhausted had been ascertained in the original action, thereby providing a basis for determining the amount of the liability of each shareholder.

In Young v. Farwell, 139 Ill. 326, a creditor's bill was filed to collect the statutory dues from an Illinois shareholder in a Michigan company, and it was held that it would not lie without a preliminary suit in Michigan:

"The appellant must first seek a remedy in the courts of the State of Michigan, and there have authoritatively determined the respective relations of creditors and stockholders of this corporation towards it and towards each other, and then, if it shall be necessary, their rights as respects stockholders domiciled in this State may be enforced in the courts of this State."

Kirtley v. Holmes, 107 Fed. Rep. 1, 46 C. C. A. 102, was an appeal from a bill filed in the circuit court of the United States for the district of Kentucky by a receiver of a defunct bank of Cincinnati to recover the statutory dues of one John M. Kirtley, deceased, a stockholder of said bank who had resided in Kentucky and whose widow still resided there and was the party sued. A suit had been filed in Hamilton county, Ohio, by a creditor of the bank against it and its stockholders for the purpose of recovering the dues of the latter and the case referred to a master, who had made a report, setting forth

the names of the stockholders, the number of shares held by each, the names of the creditors, and the amount of claims held by each, from which it appeared that John M. Kirtley had owned one hundred and twenty shares of stock of the par value of six thousand dollars. Kirtley was made a party to the original suit but died and there was an abortive attempt to revive the suit against his personal representative. A proportionate assessment was levied against the shareholders and a judgment rendered against them therefor in which the court undertook to include the representative of Kirtley; but it was adjudged that part of the decree was erroneous, because the Ohio suit had not been properly revived as to said representative. The ancillary action was brought in the Federal court in Kentucky against the widow of Kirtley, to whom he had conveyed lands in a manner which was constructively fraudulent as to creditors, and the purpose of the ancillary bill was to collect the amount due from him as a stockholder in the insolvent bank out of the lands so conveyed to and held by his widow.

This cause was decided after much consideration, construes the very statute we have before us, and sustains the right of a receiver to proceed in equity in a foreign forum to enforce the liability of stockholders in the foreign jurisdiction. It decides another point material to the one in hand which will be adverted to later. The court said:

"The case actually under consideration comes to this: Can the contractual liability of a stockholder in an Ohio corporation, domiciled in a foreign jurisdiction, be enforced, where the proofs show an assessment in the State of the creation of the corporation upon domestic stockholders to the full amount of the stockholder's liability, and the testimony discloses the insolvency of the corporation and indebtedness in excess of the stockholder's liability, and an assessment is sought of exactly the same character as was enforced in the original case? We think, in the light of principle and auth

ority, this question must be answered in the affirmative. We find the obligation to be one arising upon contract, and its enforcement upon principles of comity, at least, in cases like the one under consideration, to work no injustice upon citizens of a foreign jurisdiction."

So in Howarth v. Angle, 162 N. Y. 190, it is said:

"In that case (Marshall v. Sherman) the amount of the deficiency was not ascertained in any way by a court or otherwise; the action was not brought by a receiver; the remedy sought was that provided by the foreign statute, which created the liability; that remedy could not be wholly enforced in this State, and, to the extent that it could be enforced, might result in injustice to our citizens. In this case the action is brought by a receiver, who, according to the decisions of the Washington courts, has the title and the right of action, and the amount of the deficiency has been definitely ascertained both by the courts of that State and of this. It does not appear that there is any other stockholder or any creditor in this State or that injustice will be done to any citizen of this State by sustaining the judgment appealed from. The reasons given by the court for denying relief in Marshall v. Sherman are met by the facts of this case, which distinguish it in many essential respects and permit a recovery under the principles sanctioned, but not applied in that case because the necessary facts were wanting."

A conservative deduction from the cases we have noticed is that the judicial mind is more favorably disposed toward obligations of this kind, more inclined to make all shareholders, whether domestic or foreign, comply with them, to release the liability from theoretical difficulties and entanglements connected with its enforcement when possible, and thus render it more completely binding. In order to carry out this policy by enforcing the contract when it arises on the statute of another State which prescribes not only the right but a remedy which requires all shareholders and the corpora-

tion itself to be made parties to a suit for the benefit of all
the creditors, courts have come to hold that if an original suit
has been instituted in a court of the company's domicile and
all stockholders in the jurisdiction brought before that court,
an account taken of the debts and resources of the company,
the excess of the former ascertained, together with the sol-
vency or insolvency of its different shareholders and the sum
in which each ought to be assessed, and an appropriate decree
entered establishing those things, then an ancillary proceeding
may be had in a foreign court against stockholders resident
in that jurisdiction who could not be brought before the domes-
tic court in the original proceeding, to make them pay their
proportionate dues as ascertained in the parent suit.   We re-
gard this as a salutary exception to the general rule that a
peculiar statutory remedy to enforce a new right will not be
applied by outside courts, since it affords an effective remedy
in aid of justice, which is capable of being so used that no
possible wrong can be done to parties against whom it is in-
voked.   If it is not recognized and accepted, the courts must
often see a defendant escape from his undoubted liability be-
cause there is no way to compel him to discharge it: in other
words, must permit a party to do an actual wrong lest in com-
pelling him to do right the court itself may do wrong; an
apprehension, by the way, which is usually groundless.

It is a settled principle of jurisprudence that a remedy
shall accompany every right, and redress be afforded for every
wrong; so it is the duty of courts to adopt and use any pro-
cedure to effectuate a right or prevent a wrong, that may be
available.   We come then to the consideration of the question
whether there is any insuperable obstacle in the way of the
present proceeding to charge these Missouri shareholders of an
insolvent Ohio company?

Plaintiff's bill does not ask the Missouri courts to take
charge of the assets of the corporation, to ascertain its lia-
bility, collect its resources, find how far the assets are insuffi-

cient to pay its debts, or determine in what sum each holder of stock must respond to the creditors. All those matters are stated to have been already attended to by a domestic court of competent jurisdiction in a proceeding to which the corporation was a party as were all its Ohio shareholders. That proceeding resulted in a decree fixing the extent of the defendant's liability as well as that of the other shareholders and they have recognized the decree by paying part of the assessment levied against them. The sole question then is, whether by this bill, which we regard as a proceeding ancillary to the original one in Ohio, the defendants can be made to pay the balance due on their assessments? No reason has been suggested why they may not be compelled to do so, except that the remedy provided by the Ohio statutes to enforce the obligation created by those statutes is a peculiar one which can only be administered by the courts of that State. But the legal doctrine invoked by the respondents that the courts of one State will decline to enforce remedies provided by the statutes of another State as the obligation for the performance of a newly-created right, extends only so far as the reason for it extends, and fails when the reason fails. The reason of the law is the law itself, said Lord Coke. What is the reason of this doctrine? Simply the inability of outside courts to administer such a remedy effectively and so as to do complete justice. Or, speaking in the terms of the present case, the inability of a Missouri circuit court to obtain jurisdiction of the Columbus Watch Company or its assets, to allow the demands of creditors against it, to ascertain the amount of its indebtedness and how far short its resources will fall of meeting them and to determine what amount its shareholders ought to be assessed and make the assessment. Courts outside of Ohio can not do these things and therefore they can not and will not use the Ohio remedy but will remit creditors to the courts of Ohio. But if everything has been done by an Ohio court except to make shareholders, not resident in that jurisdiction,

pay what they owe, and what they have been found to owe, why may not that last step be taken in furtherance of justice by the court of a State where they can be found? Or, shall such a court be frightened by imaginary dangers and deterred by theoretical difficulties into letting these stockholders go free? The result of such a course, if followed in this case, would be that the dishonest refusal of these defendants to comply with their engagements would wholly exempt them from their proportionate contribution to the company's creditors; because the Ohio courts can not compel them to contribute for lack of jurisdiction over them, and the Missouri courts will not compel them for lack of jurisdiction over the company. Every step has been taken in Ohio by the plaintiff that can be, and he must either proceed against the defendants in Missouri or not proceed further at all. The only rule consistent with that exalted standard of justice which courts ought to emulate, or compatible with the transaction of business by corporations through the medium of binding contracts, is for foreign courts to aid the proceedings in the domestic one by enforcing the liability against shareholders residing outside the domicile when the necessary preliminary steps have been taken.

This case is one of first impression in this State, and in molding the law and saying what it shall be within our jurisdiction, we feel we ought to make such a choice among the contradictory precedents as will best subserve the ends of right and justice.

As opposed to this view, we are cited to the case of Nimick v. Iron Works, 25 W. Va. 184, which construes the Ohio statute in question to be non-enforcible in West Virginia. That decision seems to have induced the enactment of a statute to meet the difficulty the court encountered, as was decided in Swing v. Bently Gerwig Furniture Company, 45 W. Va. 283; and we think it is not as sound in its argument and conclusions as the cases above cited which hold the contrary view.

We prefer the lucid and, it seems to us, unanswerable reasoning of Judge Day in Kirtley v. Holmes, supra.

A question arises as to the conclusiveness of the assessments against the defendants and the other orders and decrees made in the original suit in the court of common pleas of Franklin county, Ohio. It is quite generally held that the shareholders of a corporation are bound by all proceedings to which it is a party, whether they are parties or not, if such proceedings relate to corporation affairs. Howard v. Glenn, 85 Ga. 258; Hawkins v. Glenn, 131 U. S. 319. But this statutory liability is not a corporate asset; it goes primarily to the creditors instead of the corporation itself, and can only become an asset to which the receiver or assignee of a corporation is entitled, by virtue of an order of the court where the principal suit is, directing him to collect it for the benefit of all the creditors as a convenient way of handling the matter. Respectable and, indeed, high authority can be found holding that a decree of a court that has jurisdiction of the corporation itself, ascertaining and fixing the liability, is binding on a shareholder whether he was a party to that proceeding or not, and conclusively binding on him. Hale v. Hardon; Hanson v. Davison; Howarth v. Lombard, supra. It is unsafe, generally speaking, to hold persons absolutely bound by judgments or decrees in actions to which they were not parties and in which they had no opportunity to be heard. Indeed, the above cases only treat them, we understand, as concluded in respect to the findings in the original suit concerning the indebtedness of the company and the deficiency of its assets to meet its liabilities, the amount of the latter and what sum must be raised from the shareholders; not by a finding that they are shareholders or of the amount they should contribute as such to meet corporate obligations.

We think the safer and better rule to announce is that such finding and decrees in the parent action or suit are only prima facie evidence against foreign shareholders who are not

parties thereto, thus enabling a plaintiff who relies on such parent proceeding to easily make a prima facie case, while permitting defendants to contest the findings, either because they were collusive or not in accordance with the facts, but putting on them the burden of showing they were erroneous. The principal argument against enforcing these remedies in outside jurisdictions has been the difficulty or impossibility of the courts of a foreign jurisdiction ascertaining the financial condition of the insolvent company and just what each shareholder ought to contribute to make good its debts. It seems to us too much stress has been laid on this argument as a reason for declining to entertain such suits; for unless a plaintiff who is seeking to enforce the liability proves all the necessary facts, he will be denied a decree or judgment. He must do what a plaintiff in any litigation must do: prove his case. How, then, can a defendant be prejudiced? If a plaintiff fails to place before the court facts necessary to enable it to render a proper judgment enforcing the liability, the court will simply decline to enforce it. But here all preliminary facts have been found by a court of competent jurisdiction, and certainly such presumptions and intendments obtain in favor of the Ohio court and such respect should be shown to its findings, as to make them at least prima facie proof of the facts found. This was the rule adopted in Kirtley v. Holmes, and Howarth v. Angle, supra, by the Federal Court of Appeals of the Sixth circuit and by the Court of Appeals of New York. The learning and ability of those eminent tribunals and the caution and moderation of their opinions on this subject have induced us to accept the rule they followed as the proper one to be observed in such litigation.

No point is made about the right of plaintiff to sue or whether that right is confined to the receiver appointed by the Ohio court. Indeed, this liability belongs primarily, as said, to the creditors and not to the corporation or its receiver or assignee; but such measures should be taken by the circuit

court as will render certain the distribution of the amount recovered from the defendants in case they are adjudged liable, among all the creditors of the corporation. This could best be done, perhaps, by making the Ohio receiver a party to this litigation, if he is willing, or else by exacting some security from the plaintiff to insure his accounting to the other creditors for their respective parts of the amount recovered by him, or by appointing a receiver to take charge of and distribute the sum recovered, if any.

The allegation as to the plaintiff's demand having been reduced to judgment or allowed, is not definite, but respondent has said nothing in regard thereto and we shall pass over the point, as perhaps the petition sufficiently shows his as well as the other creditors' demands have been allowed, if indeed the condition of the company is not such as to make a judgment for the demand not indispensable to his maintaining a creditor's bill.

As to the point that there is a misjoinder of parties defendant, we think the bill is well brought; because these defendants are alleged to be the only stockholders of the Columbus Watch Company resident in Missouri, and as this is an ancillary equitable proceeding, all the shareholders within the jurisdiction of the court ought to be parties to it.

The judgment of the circuit court sustaining the demurrer to plaintiff's petition is reversed and the cause remanded with directions to said court to set aside its order sustaining the demurrer, to overrule the same, to permit the defendants to answer the petition if so advised, and to proceed with the cause in conformity to the views expressed in this opinion. *Bland, P. J.,* and *Barclay, J.,* concur.