In the Matter of the Examination of the UNION BANK OF BROOKLYN.

GEORGE C. VAN TUYL, JR., as Superintendent of Banks of the State of New York, Respondent; EDWARD M. GROUT, Appellant.

Banking Law — duties and powers of superintendent of banks — superintendent may take possession of bank as receiver, but has no power thereafter to conduct a quasi judicial investigation of its management and affairs.

The theory of the Banking Law (Cons. Laws, ch. 2, sections 8 and 19) is that the superintendent of banks shall not take possession of a bank for purposes of liquidation until after he has made an examination from which it appears that the conditions warrant the exercise of the power. The statutory enumeration of the superintendent's duties which follow upon the taking of such possession indicates the legislative intent to transfer to him the general duties and functions which had theretofore been exercised by receivers, but it gives him no power to take possession for the purpose of, or to thereafter conduct, a quasi judicial investigation for the purpose of determining not whether a bank was complying with the law, but how it had been brought to disaster.

*Matter of Union Bank,* 147 App. Div. 593, reversed.

(Argued January 11, 1912; decided February 2, 1912.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 9, 1911, which affirmed an order of Special Term denying a motion to vacate a warrant of arrest issued to enforce a subpœna of the superintendent of banks directed to and served upon the appellant herein.

The following questions were certified: "1. Was the superintendent of banks, upon the facts herein disclosed, authorized to issue the subpœna dated August 22, 1911, requiring the attendance before him of Edward M. Grout? 2. Was the warrant issued upon the 16th day of September, 1911, requiring the sheriff of Kings county to apprehend Edward M. Grout and bring him before the said superintendent of banks valid process? 3. Should the application to the Supreme Court to vacate said warrant have been granted?"

The facts, so far as material, are stated in the opinion.

*Martin W. Littleton, Frank R. Greene* and *F. Sidney Williams* for appellant. Section 8 of the Banking Law, read in connection with the other parts of that law, shows that the legislature did not intend to authorize examinations of banks of which the superintendent had taken possession. Neither does the section authorize such an examination. (*Kilbourne* v. *Thompson,* 103 U. S. 168; *People* v. *Keeler,* 99 N. Y. 463; *People* v. *Webb,* 5 N. Y. Supp. 855; *Matter of Caldwell,* 138 Fed. Rep. 487.) The legislature could not invest the superintendent of banks with the power of wholesale inquisition into the past history of the Union Bank of Brooklyn under the circumstances of this case. If section 8 was designed to have such an effect, it is unconstitutional because it gives to an executive officer powers properly belonging to the courts. (*I. C. Comm.* v. *Brunson,* 154 U. S. 447; *Harriman* v. *I. C. Comm.,* 211 U. S. 407; *Boyd* v. *United States,* 116 U. S. 616; *Ex parte Cald-*

*well,* 138 Fed. Rep. 487; *Matter of Davies,* 168 N. Y. 89; *People* v. *Leubischer,* 34 App. Div. 577; *People* v. *Webb,* 5 N. Y. Supp. 855; *Matter of P. R. Comm.,* 32 Fed. Rep. 241; *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383.)

*Thomas Carmody, Attorney-General (Wilber W. Chambers* of counsel), for respondent. The superintendent of banks was authorized to issue the subpœna requiring the attendance before him of Edward M. Grout. (Cons. Laws, ch. 2, §§ 8, 19; *Lafayette Trust Co.* v. *Higgenbottom,* 136 App. Div. 747; *Hamilton* v. *Rathbone,* 175 U. S. 414; *Johnson* v. *H. R. R. R. Co.,* 49 N. Y. 455; *N. U. M. Co.* v. *Muxlow,* 115 N. Y. 170; *Matter of Brady,* 69 N. Y. 215; *Furey* v. *Town of Gravesend,* 104 N. Y. 405; *W. W. Mfg. Co.* v. *Shanahan,* 128 N. Y. 345.)

WERNER, J. On the 5th day of April, 1910, the state superintendent of banks took possession of the Union Bank of Brooklyn for the purpose of liquidating its affairs. The only authority for that act is to be found in section 19 of the Banking Law (Cons. Laws, ch. 2). That section was enacted in 1908 (Chap. 143) and it provides: "Whenever it shall appear to the superintendent that any corporation or individual banker to which this chapter is applicable has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or if the capital of any such corporation or individual banker is impaired, or if any such corporation or individual banker shall refuse to submit its books, papers and concerns to the inspection of any examiner, or if any officer thereof shall refuse to be examined upon oath touching the concerns of any such corporation or individual banker, or if any such corporation or individual banker shall suspend payment of its obligations, or if from any examination or report provided for by this chapter the superintendent shall have reason to conclude that such corporation or individual banker is in an unsound or

unsafe condition to transact the business for which it is organized, or that it is unsafe and inexpedient for it to continue business, or if any such corporation or individual banker shall neglect or refuse to observe an order of the superintendent specified in section seventeen of this chapter, the superintendent may forthwith take possession of the property and business of such corporation or individual banker, and retain such possession until such corporation or individual banker shall resume business, or its affairs be finally liquidated as herein provided." The section continues at great length and in minute detail to specify what the superintendent shall do after he has taken possession of a bank pursuant to its provisions.

The most conspicuous feature of that part of the section which we have quoted is the particularity with which it enumerates the various things which must happen or exist before the superintendent has any right to take possession of a bank. One or more or all of the conditions specified must exist and must "appear to the superintendent" before he is authorized to exercise this drastic power. As we read the statute, it charges the superintendent with the duty of investigation for the purpose of deciding whether it is his duty to take possession; but it gives him no power to take possession for the purpose of conducting a *post mortem* investigation. The title of the section, "proceedings against and liquidation of delinquent corporations and individual bankers;" the context of that part which we have quoted; the provisions which follow the quotation, and the conditions which brought about its enactment, all conspire to stamp this as a statute under which the superintendent is empowered to take possession of a bank, not as a public inquisitor, but as a receiver and conservator of its assets. The events which led to its enactment are familiar history of which we may take judicial notice. The financial depression of 1907, and the resulting embarrassment of many banks, culminated in a series of receiv-

erships in which the demands for commissions and counsel fees were so extravagant as to arouse an instant popular demand for reform. To that end the superintendent of banks was by statute invested with the powers which had previously been exercised by receivers appointed by the courts. That this was and is the nature and extent of the power conferred upon the superintendent by section nineteen is clearly evidenced by its context. "Whenever it shall appear to the superintendent that any corporation or individual banker" is doing business under the conditions forbidden by the statute, and which prior to 1908 would have authorized the appointment of a receiver, "the superintendent may forthwith take possession" and retain it until there is a resumption of the business or a final liquidation. The statutory enumeration of the superintendent's duties which follow upon the taking of such possession very clearly indicates the legislative intent to transfer to the superintendent the general duties and functions which had theretofore been exercised by receivers. The closest scrutiny of this section nineteen fails to disclose a single word or sentence giving to the superintendent any power to supplement his receivership by a public investigation. The plain theory of the statute is that the superintendent shall not take possession of a bank for purposes of liquidation until after he has made an examination from which it appears that the conditions warrant the exercise of the power.

This construction of section nineteen is sustained by the provisions of section eight of the Banking Law. The latter section was in force when the former was enacted. The earlier section (8) was not amended by the enactment of 1908 (19), and its provisions very clearly define the general powers of the superintendent of banks in the examination of corporate and individual banks. The opening sentence of the section (8) declares that the banks and bankers specified in the act "shall be subject

to the inspection and supervision of the superintendent of banks." This broad statement is then followed by directions which prescribe the limitations and conditions under which such inspection and supervision shall be conducted. Either in person, or through competent examiners, the superintendent shall visit such banks at least twice a year and "On every such examination inquiry shall be made as to the condition and resources of the corporation, the mode of conducting and managing its affairs, the action of its directors, the investment of its funds, the safety and prudence of its management, the security afforded to those by whom its engagements are held, and whether the requirements of its charter and of law have been complied with in the administration of its affairs, and as to such other matters as the superintendent may prescribe." These directions of section eight very plainly relate to the periodical examinations which the superintendent or his examiners are required to make at least twice in each year; and it is interesting to note that the language of this section has been very closely followed in the affidavits used on behalf of the superintendent to maintain his right to the examination now in progress. We are at a loss to know in what portion of the above quoted part of this section there is to be found any authority for any examinations except such as are made periodically for the purpose of enabling the superintendent to determine whether a going bank is properly conducting its business, safely investing its funds, prudently managing its affairs, adequately securing those by whom its engagements are held, and in every other way complying with the provisions of its charter and of law. Every sentence of that part of the section plainly negatives the idea that the superintendent of banks may first take possession of a bank and then proceed to hold a public investigation.

It is suggested, however, that the authority for the proceeding which the superintendent is now conducting with

reference to the Union Bank is to be found in a portion of section eight to which we have not yet referred. At the end of the paragraph of that section from which we have quoted there is a provision that "He (the superintendent) shall have power in like manner to examine every corporation and individual banker specified in section two, whenever, in his judgment, its condition and management is such as to render an examination of its affairs necessary and expedient." Two things are to be noted in construing this language. 1. It was in the statute before the enactment of section nineteen. It was in force during a long period when the liquidation of embarrassed or insolvent banks was conducted by receivers under the direction of the courts, and when no superintendent ever claimed that it gave him authority to make a quasi judicial investigation for the purpose of determining, not whether a bank was complying with the law, but how it had been brought to disaster. 2. The language of the sentence last quoted indicates that it was intended to provide for such examination, in addition to those which are to be made periodically, whenever the "condition and management" of a bank is such as to render it necessary and expedient. This provision was put into the statute obviously for the purpose of enabling the superintendent to make examinations in addition to those which are made at regular intervals, and whenever any exigency necessitates prompt action; but the power is limited to occasions when the condition and management of a bank is such as to render an examination of its affairs necessary or expedient. When once the superintendent has taken possession of a bank by virtue of the authority vested in him by section nineteen, there is no longer any management except his own, and his assumption of control proceeds, as we have seen, upon the theory that he has previously satisfied himself of the necessity for superseding the management and taking official possession.

It has not been our purpose to discuss at length either

the history of this proceeding or the many details of the Banking Law which bear upon its construction and effect. The opinions in the Appellate Division fully cover the subject. We have said enough to indicate that we concur in the conclusions expressed in the dissenting opinion of Mr. Justice WOODWARD, and we have added this short statement of our views only because the discussion in the Appellate Division took a much wider range than is necessary to the result on this appeal.

The orders of the Appellate Division and the Special Term should be reversed, and the appellant's motion to vacate the warrant issued against him should be granted. The first question certified to us should be answered in the negative; the second should not be answered; and the third should be answered in the affirmative.

HAIGHT, J. I concur in the result reached by WERNER, J.

Under section 8 of the Banking Law it is made the duty of the superintendent of banks, either personally or by a person appointed by him, to examine banks, trust companies and individual bankers at least twice in each year, and whenever, in his judgment, an examination of their affairs is necessary and expedient. On every such examination inquiry should be made as to the condition and resources of the corporation; the mode of conducting and managing its affairs; the action of its directors; the investment of its funds; the safety and prudence of its management; the security afforded to those by whom its engagements are held, and whether the requirements of its charter and of law have been complied with in the administration of its affairs and as to such other matters as the superintendent may prescribe. For this purpose the superintendent or his examiner is given power to administer oaths to the persons whose testimony may be required, and the power to compel their attendance for the purpose of such examination. Under section 17

of the law, if he finds by such examination that the capital stock of the bank has been impaired he is given power to require the same to be made good by the stockholders, and if it appears that the charter of the bank or any law binding upon it has been violated or that the business is being conducted in an unsafe or unauthorized manner it becomes his duty to direct the discontinuance of such acts and unauthorized practices; and under section 19 of the act, in case the directors and stockholders have neglected and refused to carry out his orders and directions, and it further appears that the bank is in an unsound or unsafe condition to transact business, he may take possession thereof and liquidate its affairs.

In this case the superintendent had made an examination of the Union Bank provided for by section 8 of the law and finding the same in an unsafe condition had taken possession thereof on the 5th day of April, 1910, and for upwards of a year had been engaged in liquidating its assets. During the summer of 1911 while the superintendent of banks was still in possession of the bank and its assets, through his special deputy, Edward L. Dodge, another examination was entered upon and a subpœna was served upon Edward M. Grout, the president of the bank, requiring him to appear and give testimony. He having refused to appear, the petition was presented to the court at Special Term upon which the warrant was issued, which the appellant seeks in these proceedings to have set aside.

The purpose of the examination, as stated in the petition of the superintendent, was the ascertaining the mode of conducting and managing the affairs of the bank; the action of its directors; the investments of its funds; the safety and prudence of its management; the security afforded to those by whom its engagements are held, and whether the requirements of its charter and of law had been complied with in the administration of its affairs. The evidence upon these subjects was all per-

21

tinent and material in the examination made by the superintendent to enable him to determine whether the bank was insolvent and in an unsafe condition and as to whether he should take possession of it and wind up its affairs. But the superintendent having already taken possession of the bank and its assets it is not apparent that the evidence upon those subjects is longer pertinent or material, or that it will in any manner aid the superintendent in the discharge of his further duties in administering its assets.

It further appears from the allegations of the petition that an official report had been made to the superintendent's predecessor stating, in substance, that all the reports made by the bank to the banking department of the state while Edward M. Grout was president were false, as they did not state the true condition of the bank. This and the other matters above set forth, he stated, are being inquired and examined into, and that in that connection it was necessary and material to examine Grout to ascertain what knowledge or information he had concerning these matters. The superintendent of banks is one of the administrative officers of the state charged with the duty of looking after the banks, and his deputies and examiners are ministerial officers acting under his direction. Neither is vested with judicial powers and consequently cannot determine or decide whether a person is or is not guilty of a crime. Such questions are reserved for the judicial branch of the government, and magistrates, grand juries and district attorneys are provided for the purpose of the investigation and determination of criminal complaints. If, therefore, false reports were made to the banking department it should be investigated through the judicial branch of the government which has jurisdiction over such matters.

I am not, however, disposed to construe section 8 of the statute so strictly as to cut off all rights of the superintendent to make examinations after he has taken posses-

1912.]          Opinion, per CULLEN, Ch. J.          [204 N. Y.]

sion of a bank; he then becomes charged with other and different duties; that of ascertaining the validity and value of claims due to the bank, the legality and justness of claims presented against it, the value and location of its real estate, if any, and the tracing of its assets. Information upon these subjects he may properly seek through the officers and directors of the company. Such information is not only material but necessary in order to enable him to properly discharge his duties and, I think, within a fair and reasonable construction of the statute he may require such information to be given him under oath and through the aid of a subpœna, but no evidence of this character was called for in the subpœna or in the petition upon which the warrant was issued.

I, therefore, favor a reversal of the orders appealed from.

CULLEN, Ch. J. I concur in the opinion of HAIGHT, J., and vote for the reversal of the order upon the further ground that it appeared by the affidavit of the superintendent of the banking department that the object of the examination of the relator was, among other things, to learn whether the reports made by him to the banking department stated the true condition of the bank. Making a false report is, by law, made an offense, and, under the provisions of the Constitution, no one can be compelled to be a witness against himself in a criminal case. The case before us differs from a legislative investigation. There, by statute, a witness being compelled to testify is given immunity from prosecution for any offense disclosed. But no such immunity is given from prosecution for disclosures made on an examination by the superintendent of banks or other administrative officers.

VANN, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur with WERNER, J.; HAIGHT, J., concurs in result in opinion; CULLEN, Ch. J., concurs in result in memorandum.

Orders reversed, etc.