Van Tuyl v. Carpenter.

GEORGE VAN TUYL JR., *et al. v.* JOHN CARPENTER *et al.*

*(Nashville. December Term, 1915.)*

1. **BANKS AND BANKING.   Rights of stockholders.   Represen-
tation.**

    Under the New York statute, authorizing the superintendent of
    banks to ascertain financial condition and make assessments
    on stockholders by arbitrary determination, and allowing the
    corporation ten days to apply for injunction, the doctrine of
    representation of stockholders by the corporation does not ap-
    ply, nor does the failure of the corporation to apply for in-
    junction estop the stockholders and make the assessment bind-
    ing; and the assessment, being arbitrary, will not be enforced
    in Tennessee.   (*Post, pp.* 635-638.)

    Cases cited and approved: Coe v. Armour Fertilizer Works, 237
    U. S., 413; Hartford L. Ins. Co. v. Ibs, 237 U. S., 662; Supreme
    Council R. A. v. Green, 237 U. S., 531.

2. **CORPORATIONS.   Right of stockholders.   Representation.
Powers.   Statutes.   Construction.**

    The power of representation by a corporation of its stockholders
    which may, by mere failure to exercise it, estop the stockhold-
    ers to deny liability for an arbitrary assessment of the full
    value of their stock, ought to be conferred in unmistakable
    terms of the statute itself, and will not be conferred by con-
    struction.   (*Post, pp.* 635-638.)

3. **EVIDENCE.   Rules of evidence.   Operation.   Comity.**

    No State can impose upon any other a rule of evidence for use
    in the courts of the latter.   (*Post, pp.* 638, 639.)

4. **CORPORATIONS.   Stockholder's liability.   Statutes.   Retro-
active effect.**

    A statutory amendment of another State, adopted after making of
    contract of subscription to corporation stock, and even after
    bill to enforce assessment on such stock, cannot apply to the

case so brought or the contract involved therein, even under
the rule of comity. (*Post, pp.* 638, 639.)

5. **COURTS. Decisions controlling. Validity of Statute. Anal-
ogy with other acts.**

The holding that New York laws as to arbitrary assessment by
the banking superintendent on stockholders will not be en-
forced in Tennessee does not require a similar holding as to
Acts 1913, chapter 20, which requires the banking superin-
tendent to bring corporate affairs before the court of chancery.
(*Post, p.* 639.)

Acts cited and construed: Acts 1913, ch. 20.

6. **COURTS. Decisions controlling. Matters not contested.**

While a decision that assessments by the comptroller of the
currency are conclusive necessarily implies that they are valid,
yet when that power is merely assumed without examination,
the point cannot be successfully used by analogy in determin-
ing the validity of a statute authorizing assessments by the
banking commissioner, where the question is directly raised.
(*Post, pp.* 639-641.)

Cases cited and approved: Kennedy v. Gibson, 8 Wall., 498;
Casey v. Galli, 94 U. S., 673; United States ex rel. Citizens'
Nat. Bank v. Knox, 102 U. S., 422; Bushnell v. Leland, 164
U. S., 684; Studebaker v. Perry, 184 U. S., 258;

7. **BANKS AND BANKING. Stockholders' liability. Validity of
statutes. Determination. Statutes of other States.**

In suit in Tennessee to collect arbitrary assessments on stock
by the New York banking commission, the question is not
whether the statute authorizing such assessments is valid,
but whether public policy of Tennessee permits such power to
vest in a ministerial officer. (*Post, p.* 641.)

Case cited and approved: Matter of Union Bank, 204 N. Y., 313.

8. **BANKS AND BANKING. Insolvency receivers. Actions.**

The right of the New York banking commissioner to recover
assessments under New York law in Tennessee depends on the
statute, and unless the right to sue in foreign State is given
by statute, he cannot sue in such State. (*Post, pp.* 641, 642.)

Van Tuyl v. Carpenter.

Cases cited and approved: Hale v. Allinson, 188 U. S., 65; Great Western Min. & Mfg. Co. v. Harris, 198 U. S., 561; Bernheimer v. Converse, 206 U. S., 534; Converse v. Minn. Thresher Mfg. Co.,. 212 U. S., 567; Converse v. Hamilton, 224 U. S., 243; Selig v. Hamilton, 234 U. S., 652; Irvine v. Elliott (D.C.), 203 Fed., 82;. Carnegie Trust Co. v. Crockett, 188 S. W., —.

9. **RECEIVERS.    Jurisdiction.    Action by receiver.    Foreign States.**

The rule is general that a mere chancery receiver cannot sue in a foreign State, and can assert claims only through exercise of comity by the State in which he seeks to exercise his functions,. and the rule necessarily attributes the duties of a receiver to an officer of a foreign State claiming authority under its legislative act, since foreign laws can have no extraterritorial efficacy, save in those instances which are governed by the "full faith and credit" clause of the federal Constitution.. (*Post, p.* 642.)

Cases cited and approved: Hardee v. Wilson, 129 Tenn., 511;. Booth v. Clark, 17 How., 322; Great Western M. & M. Co. v. Harris, 198 U. S., 561; Converse v. Hamilton, 224 U. S., 243'..

10. **RECEIVERS.    Insolvency receivers.    Jurisdiction of actions.**

If the receiver has the legal title to the claim sued on,. he has generally a right to sue in the foreign State. (*Post, p.* 643.)

Cases cited and approved: La Fayette Trust Co. v. Higginbotham,. 136 App. Div., 747; Matter of Union Bank of Brooklyn, 204 N. Y.,. 313; State v. Del Rio Turnpike Co., 131; Tenn., 600.

11. **BANKS AND BANKING.    Insolvency receivers.    Actions.**

Until judicial determination of amounts needed for liquidation of the corporation, the superintendent of banks, or statutory receiver, though having title to the assets and empowered to sue in a foreign State, cannot bring such suit. (*Post, pp.* 643,. 644.)

12. **CORPORATIONS.    Rights of stockholders.    Contracts.**

The liability of a stockholder for assessments arises out of the statute which imposes it, but the statute becomes binding on: the stockholder through his subscription, whereby he places, himself in such a relation to it as that he is bound by its terms,.

Van Tuyl v. Carpenter.

and may be said to agree by implication that he will pay when the conditions of his liability for a specific amount are lawfully made to appear. (*Post, pp.* 644, 645.)

Cases cited and approved: Whitman v. Oxford Nat. Bank, 176 U. S., 559; Ferguson v. Sherman, 116 Cal. 169; Flash v. Conn., 16 'Fla., 428; Bell v. Farwell, 176 Ill., 489; Stocker v. Davidson, 74 Kans., 214; Pfaff v. Gruen, 92 Mo. App., 560; Hancock Nat. Bank v. Ellis, 172 Mass., 39; Christopher v. Norvell, 201 U. S., 216; Kulp v. Fleming, 65 Ohio St., 321.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson county.—JOHN ALLISON, Chancellor.

KEEBLE & SEAY and A. W. STOCKWELL, JR., for appellants.

VERTREES & VERTREES, PITTS & McCONNICO, E. A. PRICE, C. C. TRABUE, THOS. J. TYNE, and STOKES & STOKES, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the court.

The bill in the present case was filed in the chancery court of Davidson county, against Carpenter and others, stockholders of the Carnegie Trust Company, a New York banking concern, to recover on a stock assessment made by the complainant Van Tuyl, as superintendent of banks of the State of New York. There

Van Tuyl v. Carpenter.

was a demurrer, which was sustained by the chancellor, and the complainants appealed to this court, and have assigned errors.

The bill alleges, in substance, that at the time defendants became stockholders there was a statute in New York which made stockholders liable for the debts of the corporation to the full face value, or amount, of their stock; that is, a double liability, the duty of paying in the first instance not only the full stock subscriptions, but in addition thereto an equal amount, if needed to pay the debts of the concern; that under the statute it was the duty of the complainant, as superintendent of banks to seize any bank in the State which he might believe to be in an unsafe condition, from misconduct of its officers, impairment of capital, or on numerous other grounds stated, and to administer its assets, pay its debts, and return the residue, if any, to such bank or its stockholders; that it was a part of his duty to assess the amount to be paid by stockholders, on the reserved liability mentioned, in the way of such percentage thereof, as he should deem necessary or even to the whole sum; that the Carnegie Trust Company, by reason of its conduct, became amenable to the operation of the statute, and under the authority of the statute, he took charge if it, and proceeded to administer its affairs; that on an examination of its assets and liabilities he found that the latter far exceeded the former, so that the corporation was insolvent; that he thereupon proceeded to assess the stockholders to the full amount of the reserved liability; that after

making this assessment, he notified the stockholders by mail, according to the statute, of the amount so assessed by him against each one, and demanded payment of them, but that the Tennessee stockholders now sued had failed to pay. Hence this action was brought against them.

It does not appear that the agency of any court in the State of New York was invoked to ascertain the fact of insolvency, and the necessity of assessing the stockholders, or that the statute contemplated or authorized such resort to court proceedings, all authority in the premises being conferred upon the superintendent, the only access to any court being a right accorded to the corporation assailed, within ten days after its seizure to apply for an injunction; this application to be heard by the court referred to, on pleadings and evidence offered, and an injunction to be granted restraining the superintendent from further interference, if the evidence offered should sustain the application, otherwise the application to be dismissed.

The act authorized the superintendent to sue the debtors of the bank, also provided for certain court action in the sale of noncollectible assets, and in the declaration of dividends.

This was the substance of the statute so far as necessary to be stated, at the time the original bill was filed in January, 1914. Later, an amended and supplemental bill was filed, bringing forward a New York statute passed after the filing of the original bill, giving the superintendent power to sue stockholders

either jointly or severally. So much of this new act as we deem necessary to further specially refer to is set out *infra* in the body of this opinion in its logical relation to the questions discussed.

It appears from the bill that the shares subscribed were 15,000, and of those the defendants, aggregated, represent something over 2,000.

There were ten grounds of demurrer filed, but we deem it necessary to refer to only one of them. This raises the point that the statute is arbitrary and oppressive, and should not be recognized here under principles of comity.

The New York statute under which the suit is brought authorizes the superintendent of banks to examine the bank, determine its assets, ascertain its indebtedness, and make the assessment on stockholders, without the aid of any court. In such a proceeding, and under such a power, the rights of stockholders are foreclosed without a hearing, and without their presence, either in person or by representation. The authorities hold that the corporation itself represents its stockholders in a proceeding brought in equity for its liquidation, in so far as concerns the ascertainment of the amount of assets, and debts, and the necessity of a call, leaving open to such alleged stockholder the question whether he was in fact a stockholder, and the amount of his stock, and cross-claims or credits against the corporation. *Coe* v. *Armour Fertilizer Works,* 237 U. S., 413, 423, 35 Sup. Ct., 625, and cases cited (59 L. Ed., 1031), and see on the general principle; *Hartford*

*L. Ins. Co.* v. *Ibs,* 237 U. S., 662, 35 Sup. Ct., 692, 59 L. Ed., 1165, L. R. A., 1916A, 765; *Supreme Council R. A.* v. *Green,* 237 U. S., 531, 35 Sup. Ct., 724, 59 L. Ed., 1089, L. R. A., 1916A, 771. But no such representation is supported by the authorities where the call is made by a mere nonjudicial officer belonging to the executive department of a State government. Nor do we think any such decision can be properly made, since the power exercised is purely arbitrary. Furthermore, we do not think that the arbitrary character of the proceeding is countervailed by the leave which the statute gives to the corporation to go into a court within ten days after its seizure by the superintendent, and apply for an injunction. No such privilege is accorded to the stockholders as such, or to any stockholder, so that it results, if the board of directors does not choose to apply to the court or in default thereof the majority of the stockholders, through or pursuant to a stockholders' meeting, within the ten days referred to, there is no possibility of relief for any stockholder against arbitrary action on the part of the superintendent of banks. Let it be conceded that if the directors should make such application or if the corporation should be brought into action through a meeting of the stockholders, the whole body and each of the stockholders would be represented by the corporation. It remains that in the present case it does not appear that any such proceedings were instituted by the corporation, and therefore it does not appear that there was any representation. So that, to

sustain the power exercised by the superintendent of banks, and to give effect to it against stockholders in Tennessee, we must be willing to adjudge, either that the power to represent is tantamount to actual representation, or that the possession of such power and the failure to exercise it would be binding by way of estoppel on the stockholders. The first supposition is, of course, absurd. The second is also unsound, because it is based on the presumption of an active duty resting on the corporation to apply for an injunction in every such case, or to consider the question and decide whether such application should be made. It is clear that the statute imposes no such active duty, but at most gives the corporation the privilege of making the application In deciding whether it will avail itself of the privilege, the corporation does not represent the individual stockholders as to the reserved liability due creditors from them, under the statute. The statute does not in terms give it such power, and we cannot, by construction, hold that it was conferred. Beyond doubt a power of representation so far-reaching ought to be conferred in unmistakable terms in the statute itself, so that subscribers to stock would know, when entering into the contract, the terms to which they were consenting. So it remains, as we think, that no means of relief are afforded stockholders against arbitrary action on the part of the superintendent, unless it be found in the amendment of the year 1914; which provides that in any action based on the assessment made by the superintendent—

"the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation, and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated."

No State can impose upon any other State a rule of evidence for use in the courts of the latter. But if it be assumed that the contract between the parties might be such as to make it the duty of the court of the foreign State to adopt the rule in the particular case by way of estoppel on the parties to deny its force, there is nothing in the present contract to justify such course, since the amendment was adopted long after the contract of subscription was entered into, and indeed after the original bill in the present case was filed. So, the statutory rule quoted could be applied here only through comity. Should comity, a favor, be extended here, in support of the arbitrary nonjudicial action of the superintendent of banks of the State of New York, which would cast upon our own citizens the burden of either going to New York in person, or by agents, and at great expenditure of time and money investigating all of the assets and liabilities of a great banking institution in that State? The unreasonableness of such a course is manifest on its mere statement. Cases may be easily imagined where the initial expense of such an investigation would be much

more than the liability sought to be enforced.   In such instances the mere demand by suit would be equivalent to a compulsion to pay, and so the party would be deprived of his day in court.   If the rule could so operate in any case it ought not to be enforced in this jurisdiction at all.   So the question recurs:   Shall we enforce a liability based solely on the arbitrary action of the superintendent of banks of the State of New York?   We decline to do so.   That action is arbitrary because it is based solely on the will of a single person, directed by no fixed principle declared in any form by the social organization.

It is urged that if we so hold, we must adjudge our own banking law void.   The contention is unsound: Our superintendent of banks can indeed close the doors of a bank, but he must at once bring the affairs of the bank before the court of chancery, and act under its orders. Acts 1913, chapter 20.

For an apt analogy we are referred to the power of the Comptroller of the Currency to fix the amount which the stockholders of suspended national banks shall pay, which assessments it has been held cannot be controverted.    *Kennedy* v. *Gibson,* 8 Wall., 498, 19 L. Ed., 476; *Casey* v. *Galli,* 94 U. S., 673, 24 L. Ed., 168; *United States ex rel Citizens' Natl. Bk.* v. *Knox,* 102 U. S., 422, 26 L. Ed., 216; *Bushnell* v. *Leland,* 164 U. S., 684, 17 Sup. Ct., 209, 41 L. Ed., 598; *Studebaker* v. *Perry,* 184 U. S., 258, 22 Sup. Ct., 463, 46 L. Ed., 528. No case has been cited, and we are not aware of any, in which a question similar to the one we have before us

has ever been discussed in respect of the National
Banking Acts and the powers of the Comptroller of the
Currency thereunder.   While the decision that the as-
sessments are conclusive necessarily implies that the
power conferred is valid, yet when that power is mere-
ly assumed, without examination, the point cannot be
successfully used in determining the validity of another
statute where the question is directly raised.   It is true
that in *Bushnell* v. *Leland,* supra, the constitutional
question was raised, and stated directly in the opin-
ion, but discussion of it was pretermitted on the ground
that it had been settled in *Casey* v. *Galli,* supra, and *U.
S. ex rel.* v. *Knox,* supra.   It is stated that the question
was made on the brief of counsel in *Casey* v. *Galli;* and
so it was, but we are unable to find in the opinion of
the court in that case any reference to the point! nor
is there such allusion to the question in the opinion in
*U. S. ex rel.* v. *Knox.*   So it comes to this:   That in
*Kennedy* v. *Gibson,* and *Casey* v. *Galli* the constitu-
tionality of the vestiture of such power in the Comp-
troller of the Currency was taken for granted, or si-
lently assumed, and subsequent cases by reference to
these treated the question as closed, and further con-
sideration of it, without doubt on the highest grounds
of public policy, was refused.   It is no doubt true that
if such an assessment should be sued on in a State
court, it would be enforced regardless of the views of
that court on the abstract question, since the laws of
the United States are also binding on the States so far
as applicable, and the question of comity could not

arise. So the analogy is not useful, and we need not pursue the question further.

But we should add in this connection that the question is not whether the New York act is valid. That is an inquiry for the New York courts, under the Constitution of that State, and we do not express an opinion on it. We do say, however, that it is against the policy of this State to vest such powers in a mere ministerial officer, powers which we regard as of a highly judicial nature, to be exercised only by courts after due notice and the appearance of parties in person or by representation. Indeed the principle as we state it seems to be recognized by the supreme court of the United States in those cases which we have cited, holding assessments made in foreign courts valid on the ground that, the corporation being sued and present, the stockholders were present by its virtual representation. *Coe* v. *Armour Fertilizer Works*, supra, and cases which we have cited with it. We may add that in *Matter of Union Bank*, 204 N. Y., 313, 97 N. E., 737, the superintendent of banks is classed as a mere receiver, and it is denied that he has any judicial powers.

However, if we were at liberty to disregard the reasons already stated, there is another ground conclusive against the complainants. The right of action, if any, is not in the bank, but in the superintendent of banks. His right is rooted in the statute, but that statute gives him no right to sue in a foreign State. Such vestiture has been held, by the highest authority, an essential prerequisite. *Hale* v. *Allinson*, 188 U. S., 65, 23

135 Tenn.—41

Sup. Ct., 244, 47 L. Ed., 388; *Great Western Min. &
Mfg. Co.* v. *Harris,* 198 U. S., 561, 25 Sup. Ct., 770, 49
L. Ed., 1163; *Bernheimer* v. *Converse,* 206 U. S., 534,
27 Sup. Ct., 755, 51 L. Ed., 1176; *Converse* v. *Minn.
Tresher Mfg. Co.,* 212 U. S., 567, 29 Sup. Ct., 691, 53 L.
Ed,. 654; *Converse* v. *Hamilton,* 224 U. S., 243, 32 Sup.
Ct., 415, 56 L. Ed.,·749, Ann. Cas., 1913D, 1292; *Selig*
v. *Hamilton,* 234 U. S., 652, 34 Sup. Ct., 926, 58 Ed.,
1518. And see *Irvine* v. *Elliott* (D. C.), 203 Fed., 82.
The principle was recognized by this court *arguendo,*
in the case of *Carnegie Trust Co.* v. *Crockett,* 188, S.
W.,—, June 26, 1914, at Nashville.

The rule is general that a mere chancery receiver
has no right to sue in a foreign State, and can assert
such claims as he has only through the exercise of com-
ity on the part of the State in which he seeks to exer-
cise his functions. *Hardee* v. *Wilson,* 129 Tenn., 511,
167 S. W., 475, Ann. Cas., 1916A, 94; *Booth* v. *Clark,*
17 How., 322, 15 L. Ed. 164; *Great Western M. & M.
Co.* v. *Harris,* 198 U. S., 561, 25 Sup. Ct., 770, 49 L. Ed.,
1163; *Converse* v. *Hamilton,* 224 U. S., 243, 32 Sup. Ct.,
415, 56 L. Ed., 749, and the same rule would necessarily
attribute the duties of a receiver to an officer of a for-
eign State claiming authority under a legislative act
of such foreign State, since foreign laws can have no
extraterritorial efficacy, save in those instances which
are governed by the ''full faith and credit'' clause of
our federal Constitution, and the case supposed is not
one of them.

However, if the receiver has the legal title to the claim sued on, he has generally a right to sue in the foreign State (*Hardee* v. *Wilson,* supra), but the New York cases hold that the superintendent of banks does not possess the legal title to such assets as are here sued on, but only the right to sue and collect. *La Fayette Trust Co.* v. *Higginbotham,* 136 App. Div., 747, 121 N. Y. Supp., 490; *Matter of Union Bank of Brooklyn,* 204 N. Y., 313, 97 N. E., 737.

It is true that notwithstanding the absence of the legal title in the receiver, or the absence of authority given him by statute to sue in this State, we might extend the permission, as already indicated, by comity, but for the reasons previously stated, we think this should not be done. Indeed we have recently declared nonenforceable one of our own statutes which authorized a board of turnpike superintendents, without previous judicial action, to throw open the gates of a turnpike because the condition of the road was, on inspection of the superintendents, found by them, according to their conception of the matter, not up to certain statutory requirements. *State* v. *Del Rio Turnpike Co.*, 131 Tenn., 600, 175 S. W., 1143.

We may add that even if it appeared that the foreign superintendent of banks, or statutory receiver, had either the title to the assets, or power given him by the statute of his State, to sue in a foreign jurisdiction, or both, we do not see how he could, in a foreign jurisdiction, sue stockholders on their double liability, without a previous judicial ascertainment, in

his own State, in a suit brought against the corpora-
tion, showing debts and assets and the necessity of a
call on stockholders. The possession of title would be
of no importance unless the amount due could be ascer-
tained. Likewise the right to sue in a foreign State
could have no extraterritorial effect, save as an inci-
dent to a judicial proceeding in the receiver's own
State, purporting to confer that right under statutory
authority; it would then be operative, if at all, under
the full faith and credit clause of the federal Consti-
tution.

In writing this opinion we have assumed, as the
clear weight of authority indicates, that stockholders
who subscribe for stock in a corporation, in a  State
which at the time has a statute providing for the double
liability referred to, become contractually bound
to meet and carry the liability imposed by the statute;
that the duty imposed is governer by the law of con-
tract, and the payment required cannot be treated as a
penalty. The question is much discussed in the briefs
but we deem it necessary to say nothing further on the
subject than has been said. _ *Whitman* v. *Oxford Nat.
Bank,* 176 U. S., 559, 20 Sup. Ct., 477, 44 L. Ed., 587;
*Ferguson* v. *Sherman,* 116 Cal., 169, 47 Pac., 1023, 37 L.
R. A., 622; *Flash* v. *Conn.,* 16 Fla., 428, 26 Am. Rep.,
721; *Bell* v. *Farwell,* 176 Ill., 489, 52 N. E., 346, 42 L. R.
A., 808, 68 Am. St. Rep., 194; *Stocker* v. *Davidson,* 74
Kan., 214, 86 Pac., 136, 118 Am. St. Rep., 315; *Pfaff* v.
*Gruen,* 92 Mo. App., 560, 69 S. W., 405; *Hancock Nat.
Bank* v. *Ellis,* 172 Mass., 39, 51 N. E., 207, 42 L. R. A.,

396, 70 Am. St. Rep., 232. Perhaps a better statement of the principle would be that the liability arises out of the statute which imposes it, but the statute becomes binding on the stockholder through his subscription, whereby he places himself in such a relation to it, as that he is bound by its terms, and so may be said to agree by implication that he will pay when the conditions of his liability for a specified amount are lawfully made to appear. *Christopher* v. *Norvell,* 201 U. S., 216, 224, *et seq.,* 26 Sup. Ct., 502, 50 L. Ed., 732, 5 Ann Cas., 740; *Kulp* v. *Fleming,* 65 Ohio St., 321 62 N. E., 334, 87 Am. St. Rep., 611. But if the method of ascertaining such liability is such as cannot be recognized in a foreign State because against its public policy, then such liability cannot be consistently recognized in that State. Therefore, on the grounds we have stated, such liability cannot be enforced here merely on an assessment made by the superintendent of banks of the State of New York; and the judgment dismissing the bill must be affirmed.

FANCHER, Special Judge, sitting in the place of LANSDEN, J.