RICHARDS, State Superintendent of Banks, v. CARPENTER et al.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1919.)

No. 3290.

1. BANKS AND BANKING ⬤�around313—LIMITATION OF ACTIONS ⬤⟰87(1)—TIME WITHIN WHICH STOCKHOLDERS' DOUBLE LIABILITY MUST BE ENFORCED.

Under Code Civ. Proc. N. Y. § 394, found in the chapter devoted to limitations, which declares that the chapter does not affect an action against a director or stockholder of a banking association to enforce a liability created by the commonwealth or by statute, but such action must be brought within three years after the accrual, the double liability imposed on stockholders in trust companies by Banking Law N. Y. 1909, § 196, must be enforced by action brought within three years after accrual, the three-year period being a condition, not a limitation, and so section 401 of the Code, excepting from the running of limitations the period where defendant is out of the state, has no application.

2. BANKS AND BANKING ⬤⟰313—TIME WITHIN WHICH STOCKHOLDER'S DOUBLE LIABILITY MUST BE ENFORCED.

Though Code Civ. Proc. N. Y. § 394, requiring actions to enforce the statutory liability of stockholders in banking associations to be brought

within three years, is treated as a statute of limitation against a liability of this kind created by statute of another state, nevertheless it is a condition on the right to enforce such liability imposed on stockholders in a trust company by Banking Law N. Y. 1909, § 196.

3. BANKS AND BANKING ☞310—DISTINCTION BETWEEN "BANK" AND TRUST COMPANY.

While Banking Law N. Y. § 2, which is devoted to definitions, declares that the term "bank" means any moneyed corporation, and thus would include trust companies, yet in view of the specific provisions applicable to banks and other equally specific provisions applicable to trust companies, provisions as to banks cannot be extended to cover trust companies by reason of the inclusive definition in section 2.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bank.]

4. LIMITATION OF ACTIONS ☞58(5)—ACCRUAL TO SUPERINTENDENT OF BANKS OF RIGHT TO ENFORCE DOUBLE LIABILITY OF STOCKHOLDERS OF TRUST COMPANY.

Under Banking Law N. Y. 1909, § 19, relating to superintendent of banks, and sections 71 and 196, relating to the double liability of stockholders in banks and trust companies, a cause of action to recover the double liability imposed on stockholders in trust companies accrues in favor of the superintendent of banks, at least in equity, as soon as the necessity to resort to stockholders exists, notwithstanding there has been no assessment, for under section 196 a cause of action accrues against stockholders and to a creditor of a trust company upon default in payment of his claim, etc.

5. LIMITATION OF ACTIONS ☞6(9)—AMENDMENT OF STATUTE AFTER EXPIRATION OF LIMITATION.

Where the three-year period in which the superintendent of banks might enforce the double liability of stockholders in a trust company, imposed by Banking Law N. Y. 1909, § 196, expired prior to the amendment of April 16, 1914, to section 19, relating to the powers of the superintendent of banks, which thereafter became section 80, such amendment cannot affect the action already barred.

6. LIMITATION OF ACTIONS ☞6(9)—EXTENDING OF PERIOD AFTER RIGHT OF ACTION IS BARRED.

After right of action to enforce the double liability of stockholders in trust companies, imposed by Banking Law N. Y. 1909, § 196, had been lost by the expiration of the three-year period prescribed by Code Civ. Proc. N. Y. § 394, the extension of the period within which suit might be brought by subsequently enacted amendment of 1914, cannot be considered retroactive, and to revive the action.

Appeal from the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Bill by Eugene Lamb Richards, Superintendent of Banks of the State of New York, against John H. Carpenter and others. From a decree dismissing the bill, complainant appeals. Affirmed.

John B. Keeble, of Nashville, Tenn., for appellant.

Jordan Stokes, of Nashville, Tenn., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

DENISON, Circuit Judge. The plaintiff below, appellant here, is the superintendent of banks in the state of New York. In January, 1911, the Carnegie Trust Company, a New York City corporation, was closed by plaintiff's predecessor in office, and he proceeded to

administer its affairs in accordance with New York laws. In November, 1912, he made a written finding to the effect that, in order to pay the debts of the bank, it was necessary for the stockholders to pay their full statutory liability in that event, being the double liability of 100 per cent. of the amount of the stock held by each, and he made an assessment accordingly against the stockholders of record. To collect this assessment from the stockholders living in Tennessee, he filed a bill in the state chancery court. This was eventually dismissed by the Supreme Court of the state. Van Tuyl v. Carpenter, 135 Tenn. 629, 188 S. W. 234. Thereupon his successor, the plaintiff, filed in the court below the present bill, which was generally similar to that which had been dismissed by the Supreme Court of the state, and was against the same defendants. The defendants moved to dismiss, and, upon that and other motions, the court considered two different defenses which arose upon the undisputed facts. The court thereupon dismissed the bill upon the first of these defenses, holding that the action of the Supreme Court of Tennessee had been in effect to declare that the assessment was invalid, because it was in violation of the public policy of the state of Tennessee, and that, upon this question, the federal courts in Tennessee, whatever their own opinions, were bound to follow the decision of the state court.

The correctness of this conclusion is the question which has been chiefly argued in this court; but we find it unnecessary to reach any decision thereon, since we are of the opinion that, upon the face of the papers, the action was too late, and since this conclusion alone, if correct, is a sufficient ground for affirming the judgment below, without reference to the holding of the Tennessee Supreme Court in Van Tuyl v. Carpenter, supra.

[1] The stockholders' double liability, relied upon by plaintiff, is that created by section 196 of the Banking Law of New York of 1909 (Consolidated Laws of New York of 1909, c. 2). Section 394 of the New York Code of Civil Procedure reads as follows:

"This chapter does not affect an action against a director or stockholder of a moneyed corporation, or banking association, to recover a penalty or forfeiture imposed, or to enforce a liability created by the common law or by statute; but such an action must be brought within three years after the cause of action has accrued."

This section is a part of title 2 of chapter 4 of the New York Code. The chapter is entitled, "Limitation of the Time of Enforcing a Civil Remedy," and its three titles are: (1) Limitations of Real Actions; (2) Limitations of Other Actions; and (3) General Provisions. The decisive question is whether this three-year limitation should be considered as an ordinary statute of limitations, or as a condition affixed to the creation of the liability. If the former, the action would not be barred in New York, because the defendants have not been within the state (section 401, New York Code of Civil Procedure), if, indeed, any applicable provision of the general statute of limitations would have otherwise taken effect; and it would not be barred in Tennessee, because the generally applicable statute of Tennessee provides for six years (Shan. Code, § 4472); while, if the restriction is

of the latter character, we conclude that, for the reason to be stated, the time limit had expired before this suit was brought, in January, 1917, and hence an essential condition of the liability is absent.

What we have said to be the decisive question is controlled by the decision of the Supreme Court in Davis v. Mills, 194 U. S. 451, 24 Sup. Ct. 692, 48 L. Ed. 1067. There is, in our opinion, no substantial distinction between the facts of that case and of this. The corporation laws of Montana required certain annual reports to be filed, and provided that, in default of such filing, "all the trustees of the company shall be jointly and severally liable for all the debts of the company." Thus we have a liability independently created by a manufacturing corporation law, just as there is, in the present case, an independent liability created by the banking law. Neither in that case nor in this did the same statute which created the liability prescribe any time limitation. The Montana Code of Civil Procedure contained a separate title, which embodied four chapters governing limitations upon the time of commencing actions. The various sections of this title prescribed appropriate limitations in various cases according to the nature of the action, and section 541 contained the usual provision that the time when the defendant was outside of the state should be excluded from the computation. Section 554 says:

"This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three years," etc.

The lower court certified to the Supreme Court the question whether this three-year limitation applied in a suit brought in the court of another state where the defendant resided and was found. The opinion of the court, by Mr. Justice Holmes, after stating that the defendant is entitled to the benefit of the conditions created by the foreign law under which his liability arises, continues:

"It is true that this general proposition is qualified by the fact that the ordinary limitations of actions are treated as laws of procedure and as belonging to the lex fori, as affecting the remedy only and not the right. But in cases where it has been possible to escape from that qualification by a reasonable distinction courts have been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liability wherever he is sued. The common case is where a statute creates a new liability and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. The Harrisburg, 119 U. S. 199 [7 Sup. Ct. 140, 30 L. Ed. 358]. But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right.

"If, then, the only question were one of construction and as to liabilities subsequently incurred, it would be a comparatively easy matter to say that section 554 of the Montana Code of Civil Procedure qualifies the liability imposed upon directors by section 451 of the Civil Code, and creates a condition to the corresponding right of action against them, which goes with it into any jurisdiction where the action may be brought."

The court then proceeds to consider special circumstances, which were claimed to take the case out of the conclusion just stated, overrules this contention, and continues:

"A further difference is that, while there might be difficulties in construing the general limitation upon actions for penalties as going to the right, this section is so specific that it hardly can mean anything else. We express no opinion as to the earlier act, but we think that this section 554 so definitely deals with the liability sought to be enforced that upon the principles heretofore established it must be taken to affect its substance so far as it can, although passed at a different time from the statute by which that liability first was created. * * *

"The law is dealing not with tangible property, but with a cause of action of its own creation. The essential feature of that cause of action is that it is one in the jurisdiction which created it; that it is one elsewhere is a more or less accidental incident. If the laws of Montana can set the limitation to the domestic suit, it is the least possible stretch to say that they may set it also to a foreign action, even if to that extent an existing right is cut down. We can see no constitutional obstacle in the way, and we are of opinion that they have purported to do it and have done it."

See, also, Boyd v. Clark (C. C.) 8 Fed. 849, 852; Theroux v. Northern Co. (C. C. A. 8) 64 Fed. 84, 85, 12 C. C. A. 52; Brunswick Co. v. National Bank (C. C. A. 4) 99 Fed. 635, 636, 40 C. C. A. 22, 48 L. R. A. 625; Stern v. La Compagnie (D. C.) 110 Fed. 996, 998; International Co. v. Lindstrom (C. C. A. 2) 123 Fed. 475, 60 C. C. A. 649; Atlantic R. R. v. Burnette, 239 U. S. 199, 201, 36 Sup. Ct. 75, 60 L. Ed. 226; Northern Co. v. Crowell (D. C.) 245 Fed. 668, 672.

Incidentally, this case also disposes of the contention that the section (541) providing that the time of absence from the state shall not be counted (section 401 of the New York Code) is operative to extend the three-year period of section 554 (section 394 of the New York Code). The court points out that this section is one of those in the title in which the section creating the three-year limitation is found, and that this latter section expressly declares, "This title does not affect" the specific action involved. The section regarding absence from the state is incidental to and qualifies the various periods of limitation prescribed by the title, and the provision that "this title does not affect" actions of this specific character, plainly means that neither the general periods named nor the exceptions to and modifications of those general periods have anything to do with the named action. Precisely the same situation exists under the New York Code.

Two reasons are insisted upon why Davis v. Mills should not be regarded as controlling. One reason is that the Montana statute there involved referred to actions against stockholders "to enforce a liability created by law," while the New York Code (section 394) refers to actions against stockholders "to enforce a liability created by the common law or by statute." It is said that this latter language is so general as to negative the inference that the legislative intent was to impose a condition upon statutory liabilities, and that, therefore, this section should be treated as merely one of remedial limitation. We cannot think this distinction well taken, or that the decision in Davis v. Mills can stand on such narrow ground. Liabilities created by the

common law as well as those created by statute are within the general words of the Montana act; and, however that may be, we have involved in the present case nothing excepting liability created wholly by the New York statute. Indeed, it must be doubtful whether the words "by the common law," in section 394, have any operative effect. Surely there is no "penalty or forfeiture imposed * * * by the common law," and it is not easy to think of any "liability created" by the common law against trustees or stockholders of a trust company which is not fully covered, as to stockholders, by sections 184 and 196, Banking Law, and as to directors by sections 195 and 196.

[2] The other reason is that this New York section 394 has been authoritatively interpreted to operate as a statute of limitations against liability of this kind created by the statute of another state (Platt v. Wilmot, 193 U. S. 602, 24 Sup. Ct. 542, 48 L. Ed. 809), and hence that the statute cannot now be construed as one limiting the right, but must be treated as one affecting only the remedy. We see no reason why it may not have the double character (Platt v. Wilmot, supra, 193 U. S. 613, 24 Sup. Ct. 542, 48 L. Ed. 809), and limit rights created by New York statutes while correspondingly limiting remedies against New York citizens sued in the courts of that state upon liabilities created by the law of a foreign state; and to urge, as appellant does, that rights created by the laws of one state cannot be extinguished in practical effect by the limitation laws of another state as to the citizens of the second state, is to urge the same argument of which the Supreme Court said in Davis v. Mills, 194 U. S. 456, 24 Sup. Ct. 695, 48 L. Ed. 1067:

"It is quite incredible that such an unsubstantial distinction should find a place in constitutional law."

It would be unfortunate that the liability of different stockholders, scattered over the United States, should be regulated by as many periods of limitation as there were states of residence. The estate of the insolvent bank should be speedily administered, and all interested parties should have their status promptly settled. It would be an anomaly, after three years, that citizens of Tennessee should be liable while citizens of New York were free. We are satisfied that, both by the authoritative effect of Davis v. Mills and by an independent view of the natural and probable intent of the New York Legislature, it should be held that such a liability as this was extinguished, both in New York and in Tennessee, after the expiration of the prescribed time.

[3, 4] The remaining question is whether, within the proper meaning of section 394 of the New York Code, a cause of action accrued before January, 1914, so that the requisite three years had elapsed when this suit was commenced. The utter insolvency of the trust company, when the superintendent of banks took possession in January, 1911, and the then existing necessity that all the stockholders must pay 100 per cent. of their liability, and that even then the creditors must go largely unpaid, are either expressly alleged or fairly apparent on the face of the bill. In November, 1912, the superintendent had so far completed the liquidation and ascertaining the

amount of the debts and the actual as compared with the book value of the assets as to reach and declare the conclusion that the assessment against the stockholders was necessary, and to make a demand of payment from them. The effect of this conclusion and demand upon the existence or status of a cause of action against the stockholders rests upon section 19 of the New York Banking Law as it existed in the years 1911 and 1912 (Consolidated Laws New York 1909). This provided that, whenever it appears to the superintendent that any corporation within the act is in an unsafe or unsound condition, he may take possession of the property and business and retain such possession until they shall be returned to the corporation in the manner provided, or until the liquidation of its affairs by the superintendent shall be completed. The superintendent is to collect all debts due and claims belonging to the corporation, and may sell all such property on such terms as the Supreme Court may direct, "and may, if necessary to pay the debts of such corporation, enforce the individual liability of the stockholders." He is to give notice to all who seem to be creditors, and they shall thereupon file their claims with him. The assets which he collects shall be paid out in dividends to the creditors until the creditors have been paid in full. The administration during this period is under the supervision and control of the Supreme Court. There is no statutory transfer of title to the superintendent, and he seems to have, in all substantial respects, the status of a receiver in a court of equity to wind up a corporation, with the single exception that he was not appointed by the court. He had no express authority to begin a suit against the stockholders based upon their liability, and it would seem that his remedy against the stockholders— if, indeed, any proceeding was to be taken in his name—was to file a bill in equity to procure a judicial ascertainment and enforcement of their liability, although the reported proceedings, to enforce liability under this or similar laws, seem to have been taken by some creditor in his own name for himself and others. The amendment of 1914 (Laws 1914, c. 369), hereinafter mentioned, has made clear the superintendent's right to proceed in his own name.

It is to be noted as an interesting and perhaps important fact that there are differences between the liability of a stockholder in a trust company and of one in a bank. It is true that, by the definitory provisions of section 2, it is declared that the word "bank," wherever used in the chapter, should have a meaning which would include trust companies; but then we find the chapter divided into eleven articles. Article 1 related to definitions, article 2 to general provisions, and the remaining articles, each, to a separate class of corporations within the chapter—one article to banks, one to trust companies, one to savings banks, one to building and loan associations, etc. The article relating to banks begins with a provision for forming "a corporation to be known as a bank," and the later sections of this article all refer back to the initial section by the phrase "in every such corporation," or its equivalent. The article on trust companies opens with a similar provision for forming "a corporation to be known as a trust company," and the later sections of this article refer back to "any such

corporation." It seems a necessary conclusion that, where the article upon banks makes a specific provision concerning banks and the article upon trust companies makes another and inconsistent one relating to trust companies, the provision as to banks cannot be extended to cover trust companies by reason of the inclusive definition originally given to the word "bank."

The stockholders' liability as to banks is created by section 71, which says:

"Except as prescribed in the Stock Corporation Law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

In 1897 (Laws 1897, c. 441) this section was amended by adding a provision that, if a permanent receiver has been appointed, all actions to enforce liability under this section shall be taken by and in the name of the receiver. The corresponding liability in trust companies is declared in section 196, which reads:

"If default shall be made in the payment of any debt or liability contracted by any such corporation, the stockholders thereof shall be individually responsible, equally and ratably, for the then existing debts of the corporation, but no stockholder shall be liable for the debts of the corporation to an amount exceeding the par value of the respective shares of stock by him held in such corporation at the time of such default."

Under the language of section 196, it would seem that a cause of action accrued at once to any creditor of the trust company upon default by it in payment of that particular debt. Carrol v. Green, 92 U. S. 509, 511, 23 L. Ed. 738. Apparently such suit might be brought by any creditor, and he could recover the amount of his demand against the stockholder, to the extent of the par value of the latter's stock, unless appropriate proceedings were taken in equity to enjoin his suit and to preserve the fund for the benefit of all interested (Pfohl v. Simpson, 74 N. Y. 137), and such proceeding directly by the creditor was the recognized proceeding in generally analogous cases (Hirschfeld v. Fitz Gerald, 157 N. Y. 166, 51 N. E. 997, 46 L. R. A. 839). The latest holding, made shortly before the amendment of 1914, we find in Mosler Co. v. Guaranty Co., 208 N. Y. 524, 101 N. E. 786. This involved still another similar liability (in a safe deposit company), but the powers of the superintendent under section 19 were the same in all similar cases. What is said about the superintendent's right to sue is perhaps a dictum, but his right to maintain such an action is clearly recognized (208 N. Y. 529, 101 N. E. 786), in spite of the fact that he had made no assessment valid for this purpose (208 N. Y. 534, 101 N. E. 786).

We cannot accept Richards v. Gill, 138 App. Div. 75, 122 N. Y. Supp. 620, as controlling. It is not by a court of last resort; it is not easily reconciled with the later decision of the Court of Appeals in the Mosler Case; it does not refer to, and seems entirely to overlook, section 394, an obviously pertinent and apparently controlling statute; and so far as it indicates that a cause of action does not accrue to a creditor until execution returned unsatisfied, it is based on sec-

tion. 71, which expressly incorporates the Stock Corporation Law (Consol. Laws, c. 59) conditions (Hirshfeld v. Bopp, 145 N. Y. 84, 91, 92, 39 N. E. 817), while section 196 makes no such reference and, hence, imposes no such condition.[1]

Considering the precise language of sections 196 and 19, and what we think their reasonable application to the facts of this case, and with such aid as may be had from the New York decisions, we do not doubt that a cause of action under section 196 accrued in favor of creditors, at least in equity, immediately upon the failure in 1911, and in favor of the superintendent, in equity, as soon as the necessity to resort to stockholders existed (Terry v. Tubman, 92 U. S. 156, 160, 23 L. Ed. 537), and, under the facts of this case, such necessity plainly existed at that same time. Surely no suit, by creditor or superintendent, could have been defeated because brought before ascertainment of the facts upon which the liability rested, when the statute provided for no such ascertainment. A cause of action accrues, so as to set in motion a period limitation, when there arises a right to bring a suit in which the liability may be determined; to say that it does not accrue until all the disputed facts have been litigated and decided is to abolish the limitation.

[5, 6] In deciding the question here involved, we give no force to the amendment of April 16, 1914 (Laws 1914, c. 369), by which this part of section 19 became section 80, and by which the superintendent was given power to make an assessment, and it was declared that he should have a cause of action therefor against the stockholder. Even if this operated to make him the sole proper plaintiff, and even if it fixed for the future the time when the right of action accrued, it could not so far have the latter effect as to control a limitation upon a cause of action accrued so long before that it was already barred. Nor could the extension of the limitation period from three years to six, made by this amendment and with no express retroactive effect, affect the present case. Under the view which we have adopted, the contract of the stockholders was to respond under section 196, if they were sued within three years after a default; and this obligation was gone before April, 1914. Neither Davis v. Mills nor Platt v. Wilmot is inconsistent with holding that such a liability is not so far merely contractual that the law of the forum will necessarily fix the limitation, and yet has that character (as pointed out in Whitman v. Oxford Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587); far enough so that it may be enforced in another state.

As against the two defendants who, in January, 1911, were executors of then deceased stockholders, the case is governed by the same considerations which prevail concerning the other defendants. Whether these executors be considered as defendants in their representative or in their individual capacities, the action accrued against them at the same time as against everybody else.

The decree of dismissal is affirmed.

---

[1] We observe that in the Mosler Case it was assumed, without noticing the distinctions, that a section like 196 in this respect implied the same condition found in section 71.